Very much. Appeal number 22-12-13. And I hope I'm pronouncing this properly. John Gnutek v. Illinois Gaming Board. Mr. Baker, does Mr. Gnutek pronounce the G or not? He does. He does, Judge Rovner. Yes, it's Gnutek. Okay. Thank you very much. Absolutely. Absolutely. Good morning. If it may please the court, counsel, my name is John Baker and I represent John Gnutek and we are here today asking the court to reverse a grant of summary judgment in favor of Mr. Gnutek's former employer. We brought multiple claims, but they're all basically retaliation claims. And I think that the critical... Before you get too far down this road, I am baffled at the Title VII branch of that has anything to do with the categories protected by Title VII, is this long ago 2006 or so lawsuit where he complains about reverse gender discrimination in 2004. But your brief really emphasizes the RICO case. And the Title VII anti-retaliation provision isn't just a generic don't retaliate against people for... It's tied to the race, sex, national origin, religion categories of Title VII. So can you enlighten me there? Well, Judge, that's a good question. And I think there's a lot of accuracy to what you say. It was a long time ago. I think that- was what was motivating the current things that you're talking about. What you've instead focused on is the RICO case. I think that that's probably the bigger focus. So that's just 1983 and perhaps state law, the Ethics Act, right? Well, certainly the First Amendment claim, which is the 1983 claim is premised upon the protected activity being the RICO litigation. The RICO, right. But I think it becomes important to recognize there was sort of an ongoing pattern. One piece of litigation stemmed from the next one throughout. So even though the Title VII, and in fact, when the Title VII lawsuit was brought, and again, this goes back a long time. So my memory is a little foggy on this, but we actually filed a motion at the end of that litigation to amend the Title VII to actually include the RICO claim. So the claims were tied together somewhat in that proceeding. And again, I don't know that that's entirely clear. Seems pretty thin, I just have to say, but you can proceed with the rest of your argument. All right. Thank you, Judge White. I think that there's an approach that's taken oftentimes by and they say, you know, did this employee do something that they deserve to be fired for? And I think that then the analysis goes around that. And here, you know, there's a good argument that John Gnutek deserved to be fired. All right. And if this were a merit board proceeding, he was involved in an altercation with a motorist. He's a sworn law enforcement officer. There certainly is an understanding that, yes, that would be appropriate. But that's not really what the question is. The question is, why was John Gnutek fired? And based upon the evidence that is in the record, do we have to accept or would a jury be compelled to accept the state's justification for that? And I think that... You know, you argue that the finding of guilt was not a conviction under Illinois law, but I think what we need to concentrate on is, isn't the definition of conviction in the employee handbook the relevant definition here? And isn't a finding of guilt sufficient? Well, thank you, Judge Rogner. I think that's a very fair question. And I think that's a point where the district court was wrong in its analysis of this. Because when you look at that section of the employee handbook that is relied upon, it talks about an obligation of an employee to notify the employer of a conviction. And for that purpose, it defines it broadly. It defines it quite broadly to include a variety of different things. But that's not saying that that constitutes a conviction. And it certainly doesn't constitute a conviction under Illinois law. And our primary focus here is, you know, the decision to terminate is vested with central management services. They are the ones that have to approve the termination. And so when the gaming board presents its recommendation to CMS, it should have explained all of that. There hadn't been a conviction. Well, there was this weird, I mean, Illinois judges do this actually quite a bit, I think. There's the finding of guilt. And then the judge doesn't just say, I'm going to revisit this finding of guilt without saying anything else. Instead, what the judge says is, if you can show me that you've gone to these anger management classes, and if you can show me that you've paid the victim of your outburst, you know, I believe it was $2,000, then come back in 90 days and I will get rid of the conviction. It's really just an alternative disposition. So it's certainly nothing that suggests that the judge was reconsidering his finding that Mr. Gnutek was responsible for this assault, that he had inflicted injuries on the truck driver. It's an alternative disposition, which is covered, I think, by the materials here. Well, I disagree that it's covered by the materials. I think that when CMS raises the question, you know, has he been, you know, what is going on? What was the final disposition? You know, the email going to CMS says, Mark Ostrowski said, there is no final disposition document until after he is sentenced in March. And at that point in time, they knew, based on the report, based on the record, that there was a good chance he wasn't going to be sentenced. So what about those words, good chance? It hadn't actually happened yet, so I don't know what was misleading about what the board told CMS either. Well, the good chance was because it was in the transcript from what the judge said after the finding. But did the judge know he was successfully going to complete the anger management classes? Did the judge know he was going to pay the money? No. I don't think that the judge could say definitively. And, you know, the language, it's in the brief of what the judge actually said. It's in the record, and he said he would grant it. And my point is this. If CMS, or excuse me, if IGB had been completely honest with CMS and said, look, this is what is likely to happen, CMS could have said, okay, well, maybe we rework the charges, or CMS could have said, listen, maybe we wait and see what happens with the disposition of this case. But by coming in and saying after he is sentenced in March that that is in effect what's going to happen, it seems to me that they are overselling their case to CMS. They are saying, look, this is going to happen. And, you know, this whole idea of what is a conviction, Mr. Ostrowski was, who did all of this, was a state's attorney in Cook County for nine years before he went on the board and became the executive director. So he was intimately familiar with these things. And so, you know, if IGB had the goods to fire Gnutek, and arguably they did, the question is, give them those goods. Tell the whole story, say this is what's out there, and let CMS make its decision. But by overselling the case, a jury could look at that and say, by shading the truth, we're not giving them all of the information. I'd like to go somewhere else because, you know, in the briefs, your arguments seem to focus on whether the defendants could believe that there was a conviction, but why does that really matter since the charge did include conduct on becoming an employee? And no conviction is required for that charge. I mean, what argument did you make that the defendants could not have believed that the charge of conduct on becoming an employee was appropriate here? Well, that would have been fine, Judge Rovner, if that's what the charge had been. But when you throw in the charge of conviction, what you are doing is, again, what I was suggesting to Judge Wood earlier, is you're overselling your case. And when it is CMS who is the final decision-maker, you're making your claims broader than what they actually are. And that is suggesting something that I don't believe is supported by the record. I think that IGB had an obligation to be truthful in its communications with CMS and to fully explain. And I think that the way that they phrased these things, it was intended to suggest something that wasn't, in fact, true. Now, again, if this was a case, and I see my time has expired, but just to briefly answer your question, Judge Rovner, if this were a case where the allegation was conduct on becoming, and the circuit court had made this finding, and because of that finding, we are going to terminate you, then I think that there would be a good argument that we're not here. But by adding on to it and adding in things that IGB knows really aren't accurate, what they are doing is they are providing incorrect information to the final decision-maker, which suggests, or at least a jury could conclude from that, that there is impermissible animus associated with Mr. Ganutek. And that's really what our point is, Judge Rovner. And I do see my time has expired. I thank the committee. Ms. Citrin. Good morning, Ms. Citrin. Good morning. Good morning, Your Honors, counsel. May it please the court. Assistant Attorney General Chaya Citrin, on behalf of Defendants Appellees, the Illinois Gaming Board, the Board's Administrator, and the individual defendants, Mark Ostrowski, Vincent Patera, and Karen Weathers. Summary judgment was proper on Mr. Ganutek's retaliation claims under Title VII, the First Amendment, and the Illinois Ethics Act because a reasonable jury could not find that Mr. Ganutek's prior litigation involving the Board caused or contributed to the Board's decision to discharge him from his job as a gaming agent. It's undisputed that he committed battery and that the state court found him guilty of that offense. It's also undisputed that the Board based his discharge on two disciplinary charges stemming from that offense. First, that the underlying battery incident itself constituted conduct on becoming an employee, and second, that the state court's guilty finding constituted a conviction within the meaning of the Board's employee conduct rules. Again... Mr. Ostrowski was aware of the likelihood that the conviction would be vacated. Wouldn't it be a misrepresentation to indicate that the conviction was merely awaiting sentencing? I mean, isn't the failure to inform CMS of that relevant fact some evidence that the defendant sought discharge for reasons other than his conviction? I don't believe so, Your Honor, because there was no evidence in the record that Mr. Ostrowski or any of the other defendants did not honestly believe that the Board's rule concerning convictions would not apply if the guilty finding was later vacated for a reason unrelated to Mr. Ganutek's guilt, which is what happened here, as Judge Wood pointed out. And for that reason, there was also no evidence that any of the defendants believed that central management services would not approve the conviction charge if the guilty finding was later vacated for a reason unrelated to Mr. Ganutek's guilt. So it would be speculative for a jury to infer that any of the defendants were trying to mislead central management services about the status of the criminal proceeding. But it's a funny use of the word conviction. I mean, you know, I don't see anything indicating that people would be fired based on arrests, for example, but the moment when somebody makes a finding of guilt, I don't even want to use the word conviction, a finding of guilt is a step along the way to the resolution of a criminal proceeding. Maybe the person then would be sentenced to probation, maybe they'd be sentenced to some time in prison, you know, something would happen, maybe they'd be fined. But conviction doesn't sound like the right word. And in fact, the judge says, you know, I'm going to give you one more chance to show that you shouldn't be convicted of this crime, and that's indeed the final disposition, right? Well, two points, Your Honor. First, we're not dealing with the definition of a conviction under Illinois law. We're dealing with how the board's own employee handbook defines a conviction. So it might not be the most sensical definition under Illinois law, but it is how the board itself defines the term. And regardless, it doesn't really matter whether Mr. Knutek eventually was convicted. The ultimate outcome of the criminal proceeding was irrelevant. All that matters is that he was found to have committed the offense. He's not contesting that, and that was certainly conduct on becoming an employee in his position. As everyone's noted, he was an armed officer, someone who commits battery, very reasonably should not be in that position. Right. So there are quite a few adverse credibility findings made as these proceedings unfold from his point of view, adverse findings. So are you telling me that at this stage of the game, his original story about how all of this encounter with the other driver unfolded has now been abandoned? We all know that he was the victim, et cetera, et cetera. I believe so. The state court found him not credible, and the state court's findings stand as to that. And the board would never revisit, or at least there's no evidence that the board was inclined to revisit in this case. Right. There's no reason that the board should revisit that. And he hasn't argued that the board, I mean, he said that, oh, I believe on appeal for the first time he said, oh, the board should have conducted its own investigation. Right, right. But he hasn't explained why the board should possibly do that when the state court already conducted a trial. Likewise, his point about the fact that the Illinois State Police didn't investigate the battery also makes no sense. The state court had conducted a criminal trial, found him to have committed the offense. So lack of investigation is irrelevant and would not be something a jury could rely on to find fault with. Ms. Citrin, could you address, I'd like to get your view on this so-called deviation from the usual administrative practice, the fact that the employer chose to use this administrative leave as opposed to suspension. Okay. So he thinks that he should have been put on a suspension because in his view, he would have been guaranteed reinstatement once the criminal proceeding ended without an official conviction. But there was no evidence in the record that an administrative leave was an unreasonable response to the underlying battery. There was no evidence that the board could not have placed him on administrative leave just because of the battery and discharged him based on the conduct on becoming charged. So regardless of the conviction charge and absent any evidence to show that the board routinely applies its leave classifications differently than it did here, it would be speculative for a jury to find that the choice of leave was evidence. Well, he says it was a deviation. There was no evidence in the record to support that contention, that deviation. So, but do you agree that the suspension would have entitled him to reinstatement if the bottom, if the final result of the criminal proceedings was no conviction? I believe that that could be correct if there wasn't the other charge, which was the conduct on becoming charged, which would have warranted his discharge regardless of the... Okay, but in isolation, there is this mechanism under Illinois law simply to be suspended while these proceedings unfold and then get back into your job if it's a favorable disposition to you in the end. Correct, Your Honor. There are several other, oh, two other pieces of evidence that Mr. Hickman could have used as a factual pretext. One is he argues that there's this history of retaliation based on his previous litigation. He didn't cite any supporting authority for that, and that sort of inference would have been improper because under Rule 404B of the Rules of Evidence, it's improper to introduce evidence for the purpose of proving that a defendant has the knack for discriminating. So a jury... That sounds like a First Amendment theory to me, by the way. It sounds like, you know, I engaged in activity protected by the First Amendment, namely use of the courts, and I'm being retaliated against it. Does this have anything to do with Title VII? I don't believe so, Your Honor. As you pointed out, the Title VII action, the protected activity, occurred a very long time ago, and he's also disavowed any argument that there's suspicious timing here. And finally, as for the alleged comparators, the District Court properly exercised its discretion to disregard facts that were not in the local rule statements concerning alleged comparators, and he's forfeited any challenge to that exercise of discretion, and in any event, there was no evidence that the same decision makers were responsible for his discipline as were responsible for the other employees' discipline, and there was also no... So you're saying that has to stay at the board level, not CMS, because in the end, I guess CMS would be responsible for anybody's dismissal. He hasn't made the argument that CMS was ultimately... that really the decision maker is CMS. He's been arguing that you find retaliation based on Ostrowski's involvement, so I don't... I think he's forfeited any argument on that point, and also there's no evidence the same decision maker at CMS was involved with all three of these employees. He's also... there's no evidence that his conduct, which involved violence, was comparable to the dishonest conduct that the alleged comparators engaged in. So considering the evidence as a whole, it would have been speculative for a jury to find that Mr. Gnutek was discharged because of his prior litigation involving the board and not because of the battery. Unless this court has any further questions, we respectfully request that this court affirm the District Court's judgment. Thank you, Mr. Truman. Mr. Baker, we're going to give you your two minutes. Thank you very much, Judge Rovner. I appreciate that, and I appreciate it because I wanted to address a question that you raised, Judge Ripple, and that was the deviation from policy. And I think it's pretty clear, and we outlined this in our brief, the Illinois Administrative Code establishes grounds for why you put people on a leave of absence. And one of those is suspension-pending judicial determination. Now, the regulation itself makes it clear it is not to be used, or excuse me, administrative leave status is not to be used as an alternative to suspension-pending decision on discharge or suspension-pending judicial verdict. So, you know, it makes it very clear that you're not supposed to do that. And at the time, the whole idea of credibility and those ultimate determinations, because John was placed on, Mr. Knutek was placed on administrative leave immediately after the incident, so at that time there were no credibility determinations. They placed him on that statute. Had he come back and, you know, been acquitted, or not acquitted, but had there been no finding of guilt, he would have been entitled to return. They then could have disciplined him, but they would have had to charge him with the conduct unbecoming issues because they couldn't have bootstrapped that conviction onto it. So by bootstrapping that conviction, again, they made their case stronger than what it should have been, and it's misleading to CMS when you are doing that. And that's really the contention here. They could have fired him. Had they gone about it the right way, had they done things the way that they should have done, they could have fired him and that would have been appropriate. I'm not clear as to how they made their case stronger. How they made their case stronger? Yes, how did they make their case stronger before CMS by operating the way they did? By telling them that there had been the conviction, and again, the rule that they are relying upon and that the district court relied upon is the rule of when an employee has to report to their employer. So if something, you know, and Mr. Knutek clearly reported what had happened, so that's not an issue. So by saying that there was a conviction and by suggesting in that February email... We're talking about the deviation in administrative practice. How did they beef their case? In that respect, Judge Ripple, had they done things the proper way, what would have happened under the way the state works, Mr. Knutek, after the criminal proceedings were over, he would have been reinstated to his position at that point. If he had been suspended. If he had been placed on a suspension pending judicial determination, he would have been reinstated. However, that reinstatement would have made him subject to discipline. They could still bring the charges against him. Understood. And what charge they could have brought against him was conduct unbecoming or those, but they couldn't have used the conviction because it wasn't there. Now, they didn't do that. They put him under administrative leave. Correct. What's the difference? Well, when he goes on administrative leave, it allows them to come back and use this conviction language against him when they go, when they ultimately terminate him and when they send the information to CMS. And the other, and you know, they know, they know the process and procedure of how these things actually play out. And, you know, by placing somebody on a suspension pending judicial determination, you know, you're, you're, you're taking a risk from an employer's perspective that, yeah, they are going to be found guilty or there's going to be some determination of guilt. But the rules say that that's the way to proceed. And, you know, so there is this deviation from the rule. And again, you take a look at all of these factors. Would a jury have to find that this was retaliatory? No, I wouldn't suggest that at all. I mean, they very well could look at it and say, Mr. Knutek should have been terminated, you know, and we don't think there's anything retaliatory here. But based on the history between these parties, based upon overselling their case to CMS, based upon not, you know, deviating from these rules, a jury could permissibly make that conclusion. And that is why we are asking the court to reverse. I've gone well over my allotted additional two minutes, so Judge Rovner, I appreciate it. And unless the court has any further questions, I will, I will ask that the court reverse and remand this matter for a trial. Thank you very much. And thank you to Mr. Tunis as well. Cases taken over advisement, we go on to